**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

JOHN JAMES WHITE,        :
                                      :
        Plaintiff,        :
                                      :
        v.            :    CIVIL ACTION NO.
                                      :    2:10-CV-0119-RWS
BAC HOME LOANS        :
SERVICING, LP, f/k/a      :
COUNTRYWIDE HOME LOANS   :
SERVICING, LP,          :
                                      :
        Defendant.     :

## ORDER

This case comes before the Court on Plaintiff John James White's Motion for Summary Judgment [24] and Defendant BAC Home Loans Servicing, LP's Motion for Summary Judgment [25].  After a review of the record, the Court enters the following Order.

## I. Statement of Facts

In May 2006, Plaintiff John James White ("Plaintiff") entered into a mortgage loan agreement with Countrywide Home Loans, Inc. ("CHL, Inc."), pursuant to which he signed a promissory note and security deed.  Def.'s SMF, Dkt. No. [25-3] at ¶ 1.  In June 2006, CHL, Inc. sold the loan to Federal

National Mortgage Association ("FNMA").  <u>Id.</u> at ¶ 17.  CHL, Inc. also

transferred the loan servicing rights to CHL, Inc.'s affiliate, Countrywide Home

Loans Servicing, LP, which subsequently changed its name to BAC Home

Loans Servicing, LP ("Defendant").[1]  <u>Id.</u> at ¶10.  As the servicer of the loan,

Defendant had sole responsibility for collecting Plaintiff's monthly payments

on the loan, seeking delinquent payments, taking collection actions, initiating

foreclosure proceedings, negotiating loan modifications, and otherwise acting

on behalf of FNMA, the owner or investor of the loan.  <u>Id.</u> at ¶¶ 13, 17-18.

This original loan was in the amount of $130,000, had an interest rate of

8.25%, and was secured by real property located at 400 Little Bushy Head Road

in Blue Ridge, Georgia.  <u>Id.</u> at ¶¶ 2-3.  The promissory note obligated Plaintiff

to make a payment of $976.65 on his loan by the first day of each month and

provided that failure to do so would constitute a default on the loan.  <u>Id.</u> at ¶¶ 4-

5.  Plaintiff defaulted on the loan each month between October 2006 and April

2007, between November 2007 and January 2008, and again at least once in the

---

[1] This name change occurred after Bank of America Corporation acquired CHL
Inc.'s parent corporation, Countrywide Financial.  Def.'s SMF, Dkt. No. [25-3] at ¶
12.  Plaintiff understood that Defendant represented the same entity as Countrywide
Home Loans Servicing, LP.  <u>Id.</u> at ¶ 11.

spring of 2008.  Id. at ¶¶ 38-40.  During this time Plaintiff received multiple

"Notices of Default and Acceleration" from Defendant.  Id. at ¶¶ 39-40.  After

the spring of 2008, Plaintiff made no payments on the original loan.  Id. ¶ 41.

On July 14, 2009, Defendant mailed Plaintiff two documents, one of

which was entitled "Loan Modification Agreement."  Pl.'s SMF, Dkt. No. [24-

1] at ¶ 2.  The other document[2] shows in the top left corner of the first page the

name "Bank of America Home Loans," its corporate logo,[3] and Defendant's

address, and it is internally directed to the attention of Defendant's "Home

Retention Division."  Ex. to Pl.'s Mot. Summ. J., Dkt. No. [24-2] at p. 14.  It

reads, "IMPORTANT MESSAGE ABOUT YOUR LOAN," and continues,

> "We are pleased to advise you that your loan modification has been
> approved.  In order for the modification to be valid, the enclosed

---

[2] The parties refer to the two pages of this document as two separate documents.  Pl.'s SMF, Dkt. No. [24-1] at ¶ 2; Def.'s SMF, Dkt. No. [25-3] at ¶ 21. The Court finds, however, that these two pages constitute a single document.  A header appears only on page one and shows the name of Bank of America Home Loans, its corporate logo, the name and address of Defendant, the date of the document, Plaintiff's name and address as addressee, Plaintiff's account number, and the address of the property subject to Plaintiff's mortgage.  A closing appears only on page two and states, "THANK YOU FOR YOUR BUSINESS," "The HOPE TEAM." Physical inspection of these two pages makes it clear to the Court that they constitute a single document.

[3] Defendant sometimes operates under this trade name.  Def.'s SMF, Dkt. No. [25-3] at ¶ 14.

3

documents need to be signed and returned.  The following amounts will be added to your current principal balance, resulting in a modified principal balance of $148,955.61 prior to your first payment date. . . . Your new modified monthly payment will be $1,044.33,[4] effective with your September 1, 2009 payment. . . .  Your current interest rate is 8.250%.  Your new interest rate will be 6.250%. . . ."

Id.  The document also states a new loan maturity date of August 01, 2049.  Id.

The second page of this document reads at the top, "WHAT YOU SHOULD DO," and then states, "Please sign, date and return one (1) complete set of the enclosed documents to us . . . and mail no later than August 13, 2009 to [Defendant's address]."  Id. at p. 15.  It further provides:  "This offer is contingent upon [Defendant] receiving relief from the Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification,"[5] and Plaintiff must "fulfill ALL of the terms and conditions of this letter no later than August 13, 2009, [or] [Defendant] will continue [its] collection action, including foreclosure."  Id.  Finally, the document states that the enclosed "Modification Agreement" must be signed in the presence of a notary, and that the notary

---

[4] This amount is broken down into a principal and interest payment ($845.68) and an escrow payment ($198.65).  Id.

[5] Neither party has contended that any bankruptcy occurred.

4

acknowledgment must be signed in "recordable form." Id. The document is

closed, "THANK YOU FOR YOUR BUSINESS," "The HOPE Team," under

which is written, "[Defendant] is required by law to inform you that this

communication is from a debt collector." Id.

As stated above, enclosed with this document was another document

entitled "Loan Modification Agreement." Id. at pp. 16-17. The document reads

at the top:

> "This Loan Modification Agreement ("Agreement"), made this 14th day
> of July, 2009, between JOHN JAMES WHITE, and BAC Home Loans
> Servicing, LP a subsidiary of Bank of America, N.A. (Lender), amends
> and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt
> (the Security Instrument), dated the 16th day of May, 2006 and in the
> amount of $130,000 and (2) the Note secured by, the Security
> Investment, which covers the real and personal property . . . located at
> 400 LITTLE BUSHY HEAD RD, BLUE RIDGE, GA 30513."

Id. at 16. Consistent with the document reading on page one "IMPORTANT

MESSAGE ABOUT YOUR LOAN," the Loan Modification Agreement recites

a modified loan balance of $148,955.61 and a monthly payment of principal and

interest in the amount of $845.68. Id. at 16, ¶¶ 1-2.

Plaintiff signed the Loan Modification Agreement, had it notarized, and

returned it to Defendant before August 13, 2009. Pl.'s SMF, Dkt. No. [24-1] at

¶¶ 5-6; Def.'s SMF, Dkt. No. 25-3 at ¶ 27.  The certification shows the signature of the Notary Public, Joyce Frye, as well as her seal, which clearly shows her name and expiration date.  Pl.'s SMF, Dkt. No. [24-1] at ¶ 5.  The Loan Modification Agreement provided two blank spaces in the certification for the Notary Public to first write the date and then her name.  Ex. to Pl.'s Mot. Summ. J., Dkt. No. [24-2] at p. 17.  These spaces were not filled in correctly: the day ("10th") was written in the first blank, and the month and year ("August 2009") were written in the second blank, where the Notary Public's name should have been written.  Def.'s SMF, Dkt. No. [25-3] at ¶ 28.  Defendant never signed the Loan Modification Agreement.  Id. at ¶ 29.

On August 13, 2009, Defendant sent Plaintiff a letter stating that it had received the executed loan modification but that it was "unable to process the modification" due to the following:  "Incorrect or Incomplete Notary Signature (Example: Missing Notary Public signature, Missing Notary Public stamp or seal)" and "Note Modification Return Date Expired (Example: Postmark date of returned loan modification exceeds the cutoff date referenced in the cover letter)."  Ex. to Pl.'s Mot. Summ. J., Dkt. No. [24-2] at p. 18.  The Property was

subsequently sold at a foreclosure sale on May 4, 2010.  Def.'s SMF, Dkt. No. [25-3] at ¶ 54.

Plaintiff filed suit in the Superior Court of Gilmer County for breach of contract and wrongful foreclosure, arguing that the Loan Modification Agreement was a binding contract that precluded Defendant from foreclosing on Plaintiff's property, despite his default on the original loan.  Defendant removed the case to this Court on the basis of diversity jurisdiction.  Both parties now move for summary judgment as to Plaintiff's breach of contract claim.  Defendant additionally asks this Court to find as a matter of law that Plaintiff is not entitled to damages for wrongful foreclosure, nor to attorney's fees.

## II. Discussion

## A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings,

AO 72A
(Rev.8/82)

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give

rise to any presumption that no genuine issues of material fact exist.  Rather,

"[c]ross-motions must be considered separately, as each movant bears the

burden of establishing that no genuine issue of material fact exists and that it is

entitled to judgment as a matter of law."  Shaw Constructors v. ICF Kaiser

Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

## B. Jurisdiction and Choice of Law

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff is a citizen of the state of Georgia, residing in Gilmer County, Georgia,

and the Defendant corporation is a citizen of the state of North Carolina for

diversity purposes.  Plaintiff has alleged damages in excess of $75,000.

In diversity cases, a federal court applies the law of the forum in which it sits.  LaTorre v. Conn. Mut. Life Ins. Co., 38 F.3d 538, 540 (11th Cir. 1994).  Here, the parties' cross-motions for summary judgment arise out of an agreement to modify a pre-existing security deed and promissory note.  The security deed provides that it is governed by the law of the state in which the security property sits.  This property is located in Gilmer County, Georgia.  Finding no Georgia case law that would fail to give effect to this contract provision, this Court applies Georgia law.  See generally C.A. Marine Supply Co. v. Brunswick Corp., 557 F.2d 1163 (5th Cir. 1977) (applying Wisconsin law in accordance with contract);[6] cf. Keener v. Convergys Corp., 205 F. Supp. 2d 1374, 1378 (S.D. Ga. 2002) (the law of the jurisdiction chosen by parties to a contract will not be applied by Georgia courts if it contravenes the policy of the state).

---

[6]The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

**C. Breach of Contract**

Both parties move for summary judgment as to Plaintiff's breach of contract claim.  Plaintiff argues in his brief that the Loan Modification Agreement became a binding contract when Plaintiff signed it, had it notarized "in recordable form," and returned it to Defendant by August 13, 2009, in accordance with Defendant's instructions.  Plaintiff argues that Defendant breached this contract by rejecting Plaintiff's acceptance, refusing to accept payments from Plaintiff under the terms of the Loan Modification Agreement, and foreclosing on the Property.

Defendant argues, on the other hand, that the Loan Modification Agreement never become a binding contract because Defendant did not sign it. It makes the related but separate argument that the Loan Modification Agreement is unenforceable under Georgia's statute of frauds.  The Court first will address the issue of contract formation before turning to the statute of frauds.

1. Contract Formation

The Court concludes that the Loan Modification Agreement constitutes a binding contract.  The essential elements of a valid contract are a subject matter,

a consideration, and the mutual assent of the parties as to all terms of the agreement.  <u>Lamb v. Decatur Fed. Sav. & Loan Assoc.</u>, 411 S.E.2d 527, 529 (Ga. Ct. App. 1991).  Mutual assent exists where the offer and acceptance show a "meeting of the minds" of the parties.  <u>Id.</u>  In this regard, an offer is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  <u>Rakusin v. Radiology Assocs. of Atlanta, P.C.</u>, 699 S.E.2d 384, 388 (Ga. Ct. App. 2010) (quoting Restatement (Second) of Contracts § 24 (1981)).  The acceptance must be "unconditional, unequivocal, and without variance of any sort . . . ."  <u>Lamb</u>, 411 S.E.2d at 529.  It must also comply with any requirements in the offer as to time, place, or manner of acceptance; in turn, an offeror who makes such requirements will be bound by an acceptance that so complies.  17 Am. Jur. 2d <u>Contracts</u> § 93 (2011).

The Court concludes that the two page document reading on the first page, "IMPORTANT MESSAGE ABOUT YOUR LOAN," which Defendant mailed to Plaintiff along with Loan Modification Agreement on July 14, 2009, constituted an offer.  This document advised Plaintiff that his loan modification application had been approved and that $20,917.28 would be added to his

principal balance.  It stated that Plaintiff's modified monthly payment of

principal and interest would be $845.68, effective with his first payment on

September 1, 2009, and his new interest rate 6.250%.  Finally, the document

provided that these modifications of his loan would be effective so long as

Plaintiff signed and returned the enclosed Loan Modification Agreement.  In

addition, the second page of the document refers to itself as an "offer."  This

page, which reads at the top, "WHAT YOU SHOULD DO,"  instructed Plaintiff

that the Loan Modification Agreement should be signed, notarized in

"recordable form," and returned no later than August 13, 2009.

Given the definiteness of the promises Defendant made in this document

in relation to the loan modification, the specificity of its instructions as to how

Plaintiff could accept the offer, and the fact that the document referred to itself

as an "offer," Plaintiff was justified in believing that a valid contract would

result if he signed and returned the Loan Modification Agreement as requested.

This document thus constituted an offer, which, if accepted properly, would

create a binding contract.

The Court further finds that Plaintiff accepted Defendant's offer by

following the offer's instructions as to time and manner of acceptance.  The

AO 72A
(Rev.8/82)

undisputed facts show that Plaintiff signed the Loan Modification Agreement, had it notarized, and returned it to Defendant as requested before August 13, 2009.  Defendant's subsequent rejection of this acceptance was thus invalid.

Defendant rejected Plaintiff's acceptance on two grounds:  "Incorrect or Incomplete Notary Signatures (Example: Missing Notary Public signature, Missing Notary Public stamp or seal)" and "Note Modification Return Date Expired."[7]  With regard to the first ground, Defendant concedes that the Notary Public's signature and stamp or seal are not missing from the certification. Defendant nonetheless defends its rejection of Plaintiff's acceptance on this ground, pointing to the Notary Public's failure to write the date and her name on the precise lines designated for those purposes.  Its offer, however, only required that the notary acknowledgment be in "recordable form."  As Defendant has not argued that the Notary Public's error precluded the notary

---

[7] As Plaintiff argues, this second basis for rejection is clearly invalid.  Given that Defendant acknowledged its receipt of the signed Loan Modification Agreement from Plaintiff by letter dated August 13, 2009, Plaintiff must have returned the document by August 13, 2009, the deadline set forth in Defendant's offer.  As Defendant has not defended its rejection of Plaintiff's acceptance on this ground, the Court will not further consider it.

acknowledgment from being in recordable form, such a trivial mistake does not give Defendant a valid basis for rejecting Plaintiff's acceptance.

Having concluded that the parties entered into a valid contract, the Court next considers Defendant's argument that the contract is unenforceable under Georgia's statute of frauds.

2. <u>Statute of Frauds</u>

Defendant argues that the Loan Modification Agreement is unenforceable under the statute of frauds because Defendant never signed it.  The Court disagrees.  Under the statute of frauds, "[a]ny commitment to lend money" is unenforceable unless it is "in writing and signed by the party to be charged therewith . . . ."  O.C.G.A. § 13-5-30(7).  Defendant correctly argues that mortgage loan agreements fall within this provision.  <u>See</u> <u>Allen v. Tucker Fed.</u> <u>Bank</u>, 510 S.E.2d 546, 547 (Ga. Ct. App. 1998) (applying O.C.G.A. § 13-5-30(7) to agreement to reinstate or refinance mortgage).  Furthermore, "[w]hen a contract is required by the Statute of Frauds to be in writing, any modification of the contract must also be in writing."  <u>Walden v. Smith</u>, 546 S.E.2d 808, 810 (Ga. Ct. App. 2001).  The Loan Modification Agreement at issue in this case thus falls squarely within the statute of frauds.

15

The Court concludes that the statute of frauds is satisfied in this case by Defendant's offer, which sets forth the essential terms of the Loan Modification Agreement and bears, among other things, its printed name, "Bank of America Home Loans,"[8] corporate logo, and address.  First, the Court finds that the offer is a sufficient "writing" to satisfy the statute.  "The statute of frauds does not require that the contract with which it deals be created in writing, but requires only that there shall be written evidence signed by the party to be charged therewith, showing that the contract was made."  Beckworth v. Beckworth, 336 S.E.2d 782, 786 (Ga. 1985) (citing Capital City Brick Co. v. Atlanta Ice & Coal Co., 63 S.E. 562 (1908)).  "[A]ny writing . . . in which the party charged admits, over his signature, all of the terms of the contract insisted upon by the opposite party, is sufficient."  Id.

Accordingly, where an offer is in writing, recites the essential terms of the agreement, and is signed by the party to be charged, the offer itself is sufficient to satisfy the statute of frauds, provided it properly has been accepted so as to form a contract.  See Smith v. Davis, 536 S.E.2d 261, 263 (Ga. Ct. App.

---

[8]As set forth above in the statement of facts, BAC Home Loans was operating under the trade name "Bank of America Home Loans."

2000) (finding written offer to amend lease option agreement sufficient to satisfy statute of frauds where it contained essential terms of proposed amendment and was signed by the party to be charged, but holding no contract existed because offer was revoked before it was accepted); <u>Valiant Steel & Equip., Inc. v. Roadway Express, Inc.</u>, 421 S.E.2d 773, 775 (Ga. Ct. App. 1992) (holding written offer signed by party to be charged insufficient to satisfy statute of frauds because it had not been accepted); <u>Presto v. Scientific-Atlanta, Inc.</u>, 388 S.E.2d 719, 720 (Ga. Ct. App. 1989) (holding written offer insufficient to satisfy the statute of frauds where offer did not include all essential terms of the agreement).

As explained in Part C.1., *supra*, Defendant's written offer recites all essential terms of the Loan Modification Agreement:  it identifies Plaintiff as the offeree, specifically identifies the property subject to the mortgage, recites the total amount to be added to Plaintiff's loan, the amount of his modified monthly payments, his new interest rate, and the new loan maturity date. Plaintiff properly accepted the offer to form a valid contract.  The offer is thus a "writing" sufficient to satisfy the statute of frauds.

17

Second, the Court finds that the written offer was "signed" by Defendant, the party to be charged, as required by the statute.  The purpose of the signature requirement of the statute of frauds is to ensure that a writing relied upon as a memorandum of agreement is authentic.  See, e.g., 72 Am. Jur. 2d Statute of Frauds § 276 (2011) (providing that any signature will satisfy the statute of frauds if written for the purpose of authenticating the document).  Accordingly, no specific form of signature is required.  "The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer."  Restatement (Second) of Contracts § 134 (1981).  See also 72 Am. Jur. Statute of Frauds § 274 ("A signature used to satisfy the statute of frauds may appear anywhere in a document and may be typed, printed, or stamped, as well as written.").

In this case, Defendant's trade name, Bank of America Home Loans, and corporate logo prominently are displayed in the top left hand corner of its offer letter.  Defendant's address is also displayed in the top left hand corner, and the offer letter is internally directed to the attention of Defendant's "Home Retention Division."  Finally, the offer letter is closed with the words "THANK YOU FOR YOUR BUSINESS," "The HOPE Team."  The last line of the offer

18

letter, under "The HOPE Team," reads, "BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector." It is undisputed that Defendant prepared this letter and mailed it to Plaintiff.

All of the above clearly indicate that the offer letter is an authentic writing prepared by Defendant, and this is all the statute of frauds requires. Despite Defendant's arguments to the contrary, it is immaterial for purposes of the statute that Defendant did not counter-sign the Loan Modification Agreement.  It is sufficient that it "signed" its own offer.  To hold otherwise would be to allow Defendant to use the statute of frauds to perpetrate a fraud by denying the existence of an agreement into which it clearly intended to enter

This conclusion is reinforced by the definition of "signed" in the Uniform Commercial Code (U.C.C.) and the Georgia courts' interpretation of that definition.  Under U.C.C. § 1-201(b)(37) (O.C.G.A. § 11-1-201(39)), "signed" is defined to mean "using any symbol executed or adopted with present intention to adopt or accept a writing."  In <u>Kohlmeyer & Co. v. Bowen</u>, the Georgia Court of Appeals held that a standard printed form was "signed" so as to satisfy the U.C.C. where the Plaintiff's corporate name, company symbol, address, and other information were printed at the top, even though the form

AO 72A
(Rev.8/82)

had never been manually signed.  192 S.E.2d 400, 404 (Ga. Ct. App. 1972).[9]

The court explained,

> "In conformity with the spirit behind the broad definition of 'signed,' the courts have looked to the writing as well as the attendant circumstances to determine whether the symbol was executed or adopted by the party with present intention to authenticate,[10] and in the great majority of cases the requisite intent has been found notwithstanding the fact that irregularities appeared on the writings or the niceties and formalities of manual signatures were lacking."

Id. (citations omitted).  Following this framework, the court reasoned,

> "Since the evidence is direct and uncontroverted that [the plaintiff] took this form, completed it with details of the account and terms of the contract, and addressed and mailed [it] to [the defendant], a finding [is] authorized if not demanded that [the plaintiff] adopted its printed name with present intention to authenticate the writing . . . ."

Id.

Most importantly for purposes of the instant case, the court in Kohlmeyer

stated that the U.C.C. definition of "signed" is consistent with Georgia contract

law outside the context of the U.C.C.  The Court noted, "In ordinary contract

_____

[9] The Kohlmeyer court considered whether a statement confirming an agreement to purchase securities was "signed" as required under U.C.C. § 8-319, which requires that contracts for the sale of securities be evinced either by a writing signed by "the party against whom enforcement is sought," or by a "writing in confirmation of the sale or purchase and sufficient against the sender . . . ."

situations it has long been the law of this State that whatever a maker intends as his signature is his signature and gives effect to his contract. . . .  All of this is consistent with the specific provisions of the Uniform Commercial Code." <u>Id.</u> at 405 (internal citations omitted).

In <u>Trout v. Nash AMC/ Jeep, Inc.</u>, the Georgia Court of Appeals similarly found a sales agreement to be "signed" by the defendant car dealership where the agreement bore the defendant's corporate name, address, and other information at the top.  278 S.E.2d 54, 58 (Ga. Ct. App. 1981).[11]  The agreement at issue consisted of a standard printed form, which had labeled blank spaces in which specific details of the parties' transaction had been typed. 278 S.E.2d 54, 58 (Ga. Ct. App. 1981).  The court reasoned, "A complete signature is not necessary to constitute an authentication as it may be printed and may be on any part of the document including a billhead or letterhead." <u>Id.</u> (citing <u>Kohlmeyer</u>, 192 S.E.2d 400).  Thus the court held,

---

[11] The issue in <u>Trout</u> was not whether the U.C.C. statute of frauds was satisfied, but rather whether Georgia's Motor Vehicle Sales Finance Act was satisfied. (That Act requires retail sales agreements to be in writing and signed by both buyer and seller.)  Nonetheless, the court looked to the definition of "signed" under the U.C.C. to reach its decision, and thus its reasoning is relevant here.

> "Because the evidence is uncontroverted that [the defendant] took this form, completed it with details and terms of the contract and delivered [it] to [the plaintiff], a finding [is] authorized if not demanded that [the defendant] adopted its typed name at the top of the form with present intention to authenticate the writing . . . ."

Id. (citing Kohlmeyer, 192 S.E.2d at 404). While the U.C.C. definition of "signed" does not control the outcome of this case, the Court does not think the meaning of "signature" for purposes of the statute of frauds should vary dramatically, if at all, between the U.C.C. and ordinary contract situations. The broad definition of "signature" under the U.C.C. reinforces the Court's conclusion that Defendant in this case "signed" its offer letter and satisfied the statute of frauds.

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Summary Judgment on the breach of contract claim is correspondingly **DENIED**. The Court concludes that the parties are bound by the Loan Modification Agreement and orders that the foreclosure sale be set aside.[12]

---

[12] The Court has decided the issue presented in these motions solely on grounds of breach of contract, as it is far from clear from Plaintiff's submissions that Plaintiff is also seeking damages for the separate tort of wrongful foreclosure. Plaintiff once uses the term "wrongful foreclosure" in his own motion, but appears to be using the term merely descriptively and in connection with his breach of contract claim. The

**D. Attorney Fees**

Defendant also asks this Court to find as a matter of law that Plaintiff is not entitled to attorney fees.  Plaintiff argues in response that it is entitled to attorney fees under O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, has been stubbornly litigiousness, and has caused Plaintiff unnecessary trouble and expense.   The Court concludes that Plaintiff has put forth sufficient evidence of bad faith to satisfy its burden on summary judgment.  The Plaintiff has failed to produce any evidence, however, of stubborn litigiousness or unnecessary trouble or expense.

The general rule in Georgia is that attorney fees are not available unless authorized by statute or contract.  O'Conner v. Bielski, 701 S.E.2d 856, 858 (Ga. 2010).  By statute, "litigation expenses" are available "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.  "Litigation expenses"

―――――――――――――――

Court finds that the relief Plaintiff is seeking is specific performance of the Loan Modification Agreement and that the foreclosure sale be set aside.  Although the Defendant has addressed, in an abundance of caution, possible theories of wrongful foreclosure that Plaintiff may have asserted, the Court declines to address this separate cause of action and finds that appropriate relief can be granted solely on contract grounds.

under this provision include attorney fees.  See, e.g., Chong v. Reebaa Constr. Co., Inc., 665 S.E.2d 435, 437 (Ga. Ct. App. 2008) (awarding attorney fees under O.C.G.A. § 13-6-11 upon finding of bad faith).  These bases for attorney fees are considered in turn.

    1. Bad Faith

    With regard to bad faith, Plaintiff argues that Defendant acted in bad when it rejected Plaintiff's acceptance of the Loan Modification Agreement on the basis that the Notary Public had failed to write the date and her name on the precise lines designated for those purposes.  Plaintiff argues this amounts to bad faith because Defendant's only requirement had been that the notary acknowledgment be in "recordable form," and Defendant never contended that the Notary Public's errors prevented the acknowledgment from being in recordable form.

    The "bad faith" permitting an award of attorney fees under O.C.G.A. § 13-6-11 must "relate[] to the defendant's conduct during the subject transaction prior to litigation, not to conduct in defending the litigation."  Id.  In a breach of contract action, conduct rises to the level of bad faith only if it was motivated by some "interested or sinister motive."  Lexmark Carpet Mills, Inc. v. Color

Concepts, Inc., 583 S.E.2d 458, 461 (Ga. Ct. App. 2003).  See, e.g., Tattersall

Club Corp. v. White, 501 S.E.2d 851, 855-56 (Ga. Ct. App. 1998) (finding bad

faith where employer refused to pay employee compensation due under a

contract, despite lack of any bona fide controversy as to whether employee was

entitled to compensation, and despite fact that employer was admittedly

satisfied with employee's performance).  Bad faith does not exist where a

breach of contract merely results from "an honest mistake as to one's rights or

duties."  Id.  Finally, whether some conduct amounts to bad faith under

O.C.G.A. § 13-6-11 is generally for the jury to decide.  Mariner Health Care

Mgmt. Co. v. Sovereign Healthcare, LLC, 703 S.E.2d 687, 691 (Ga. Ct. App.

2010).  "Indeed, 'only in the rare case where there is absolutely no evidence to

support the award of expenses of litigation would the trial court be authorized to

grant summary adjudication on such issues.'"  Id. (quoting Am. Med. Transp.

Group v. Glo-An, Inc., 509 S.E.2d 738, 741 (Ga. Ct. App. 1998).

    As a threshold matter, although Defendant has asserted a good faith

defense to Plaintiff's breach of contract action, the conduct that is relevant to

the bad faith inquiry is Defendant's conduct at the time of breach.  That is,

although Defendant, *in this litigation*, has asserted a good faith legal argument

for why it should not be bound by the Loan Modification Agreement, its after-the-fact litigation defenses say nothing about its conduct on August 13, 2009, when it, in the absence of its lawyers, repudiated its agreement with Plaintiff.

Based on the evidence put forward by Plaintiff, the Court cannot find as a matter of law that Defendant did not repudiate the Loan Modification Agreement in bad faith.  Defendant has never contended that the notary acknowledgment was not in recordable form as a result of the Notary Public's exceedingly trivial errors.  Nor do these errors fit the Defendant's description of an "Incorrect or Incomplete Notary Signature," as the notary public's signature and stamp or seal are clearly visible.  Based on these facts, a reasonable jury could conclude that Defendant's actions were driven by "buyer's remorse," rather than an honest mistake as to whether the Loan Modification was a binding agreement.  While Defendant's conduct certainly seems less reprehensible than the conduct at issue in <u>Tattersall</u>, there is a genuine dispute of material fact as to whether Defendant's attempt to avoid being bound by the Loan Modification Agreement was taken in bad faith.  Therefore, the Court cannot find as a matter of law that Plaintiff is not entitled to attorney fees on this ground.

26

2. <u>Stubborn Litigiousness and Unnecessary Trouble and Expense</u>

Plaintiff also contends that Defendant has been stubbornly litigious and has caused Plaintiff unnecessary trouble and expense.  In support of this argument, Plaintiff points only to the fact that Defendant failed to honor the Loan Modification Agreement, resulting in this litigation.  Recovery of attorney fees under O.C.G.A. § 13-6-11 on the basis of stubborn litigiousness or conduct causing unnecessary trouble and expense may be had only where no bona fide controversy exists between the parties.  <u>Tattersall</u>, 501 S.E.2d at 856. Conversely, attorney fees may not be awarded on either of these grounds where "a genuine dispute exists–whether of law or fact, on liability or amount of damages, or on any comparable issue."  <u>Brown v. Baker</u>, 398 S.E.2d 797, 800 (Ga. Ct. App. 1990).

While there is a genuine issue of material fact as to whether Defendant's actions were taken in bad faith, a bona fide controversy was presented in this litigation as to whether the Loan Modification Agreement was legally enforceable.  The Court thus finds as a matter of law that Plaintiff is not entitled to attorney fees on grounds of stubborn litigiousness or conduct causing unnecessary trouble and expense.

27

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for attorney fees on the basis of stubborn litigiousness and unnecessary trouble and expense.  Defendant's Motion for Summary Judgment is **DENIED**, however, as to Plaintiff's claim for attorney fees on the basis of bad faith.

## III. Conclusion

Plaintiff's Motion for Summary Judgment [24] is **GRANTED**. Defendant's Motion for Summary Judgment [25] is **GRANTED, in part** and **DENIED, in part.**  In light of the Court's rulings, the only remaining issue is the amount of attorney fees to which Plaintiff may be entitled under O.C.G.A. § 13-6-11 on his bad faith claim.  The Court directs the parties to engage in good faith discussions to resolve this issue, if possible, without further involvement of the Court.  If the parties are unable to reach an agreement within twenty-one (21) days, they must notify the Court.  In that event, the Court will refer the matter to a magistrate judge for mediation.

AO 72A
(Rev.8/82)

**SO ORDERED**, this  26th  day of September, 2011.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)